IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| DARRYL E. HILL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:04-CV-329 (DF) |
| | : | |
| TIMOTHY MULL, | : | |
| CHARLES SANDERS, and | : | |
| CRAIG NASWORTHY, | : | |
| individually and in their official | : | |
| capacities, and THE CITY OF | : | |
| DANVILLE, GEORGIA, | : | |
| | : | |
| Defendants. | : | |

## O R D E R

## I.    INTRODUCTION

Plaintiff Darryl E. Hill ("Hill") instituted this action against Defendants Timothy

Mull, Charles Sanders, Craig Nasworthy, and the City of Danville ("City"), alleging

Defendants violated his rights guaranteed by the Fourth Amendment to the United States

Constitution, made applicable to the States through the Fourteenth Amendment, and

enforced through 42 U.S.C.A. § 1983 (West 2005).  Hill also asserts state-law claims for: (1)

assault; (2) battery; (3) false arrest; (4) unlawful taking; (5) false imprisonment; (6) wrongful

detention; and (7) intentional infliction of emotional distress.   Before this Court is

Defendants' Motion for Summary Judgment (doc. 15).   To date, Hill has not filed a

Response to Defendants' Motion for Summary Judgment.[1]   Nonetheless, after a thorough

review of the record and the relevant case law and statutes, the Court hereby concludes

that Defendants are entitled to partial summary judgment.

## II.   STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported

claims or defenses."   ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323-24 (1986).   Summary

judgment must be granted if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and . . . the moving party is entitled to a judgment as a matter of

law."   Fed. R. Civ. P. 56(c); *see also* ***Celotex Corp.***, 477 U.S. at 322.   A genuine issue of

material fact necessary to defeat a properly supported motion for summary judgment

arises only when "the evidence is such that a reasonable jury could return a verdict for the

---

[1] The Court feels compelled to note its extreme displeasure with Hill's counsel, Ms. Sonya Popken, and her failure to fully prosecute Hill's claims.  While the Court is obligated to conduct an independent review of the record, and to satisfy itself that no genuine issues of material fact exist before granting Defendants' summary-judgment motion, this task is far less arduous when the Court has before it both parties' briefs.  In this case, Hill's failure to respond to Defendants' summary-judgment motion hampered the Court's review of the motion, delayed its disposition, and unnecessarily taxed the Court's time and resources.  If and when this case proceeds to trial, the Court fully expects Ms. Popken to fully present Hill's claims, despite the fact that she did not feel compelled to do so at this stage of the proceedings.

nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 150 (2000); *see also* ***Maynard v. Williams***, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law. ***Celotex Corp.***, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56(e); ***Celotex Corp.***, 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  *See* ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).  "If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Fed. R. Civ. P. 56(e) (emphasis added). Under

this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." ***Celotex Corp.***, 477 U.S. at 322. The district court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." ***United States v. One Piece of Real Prop.***, 363 F.3d 1099, 1101 (11th Cir. 2004).

## III.    FACTUAL BACKGROUND

Construing the record in the light most favorable to Hill, and drawing all reasonable inferences in his favor, the relevant facts, recounted in some detail, are these.  On the evening of October 4, 2002, Plaintiff Darryl E. Hill left Atlanta, Georgia, intending to meet his sister later that evening in Allentown, Georgia.  The two siblings had previously agreed to meet at a warehouse in Allentown around 9:00 p.m. so that Hill could give his sister some items to sell at a yard sale.  When Hill arrived at the warehouse in Allentown, however, his sister was not there.  Because he did not have a cellular phone with him, he decided to search for a pay phone so that he could contact his sister.

During Hill's search for a pay phone, he was pulled over by a police officer in Wilkinson County.  The officer had noticed Hill driving around town for some time, so he asked Hill where he was going.  Hill explained his situation, and the officer let him go

4

without a warning or other citation.  Once the officer left, Hill resumed his search for a pay

phone.  About a half-mile from where he was pulled over, Hill spotted a pay phone at a

local service station, so he pulled into the station to get gas and to use the phone.

When Hill approached the service station, two police officers, Defendants Timothy

Mull and Charles Sanders, were on duty in a marked police vehicle in the service station's

parking lot.  As  Hill pulled into the parking lot, the officers activated the vehicle's blue

lights, turned around, and pulled in behind Hill at a gas pump.  Hill stepped out of his

truck, and was immediately confronted in an "aggressive" manner by Mull and Sanders.

(Hill Dep. 21.) Mull informed Hill that his radar registered Hill's speed at 65 miles per hour

in a 45-mile-per-hour zone.  Hill responded that he could not have been speeding because

he had just been stopped by another officer only minutes before.  Notwithstanding Hill's

protests, Mull wrote him a ticket for speeding.  Hill took the ticket, and, as he turned

towards the convenience store, he muttered "what a jerk" to himself.[2]  (Id. at 23.)  At that

point, Mull and Sanders charged at Hill "like football players."  (Id. at 24.)   Mull and

---

[2] Not surprisingly, Officer Mull offers a much different account of what transpired after Mull issued
Hill the ticket.  According to Mull, right after he gave Hill the ticket, Hill "balled it up and threw it into his
truck."  (Mull Aff. ¶ 6.)  Hill then called Mull a "fucking jerk."  (Id.) When Mull asked Hill to repeat what
he had said, Hill replied, "You heard what I said."  (Id.)  At that point, Mull, believing "Plaintiff's behavior
to be in violation of O.C.G.A. § 16-11-39, which concerns the offense of disorderly conduct," placed Hill
under arrest.  (Id.)

Sanders then grabbed Hill and slammed him into the front of his truck. (Id. at 24-25.) Even though Hill never resisted the officers' attempts to handcuff him, the officers proceeded to twist Hill's arm "harder and harder, higher [and higher]." (Id. at 26.) After handcuffing Hill, Mull told Sanders that he thought Hill was "resisting arrest" and that they "might have to throw him to the ground." (Id. at 28.) Although Hill was still not resisting, the officers picked Hill up and threw him headfirst into the concrete. (Id. at 29.) Before Hill reached the ground, however, Mull and Sanders "came down on [Hill's] back with their knees" and "slammed [him] into the pavement." (Id. at 30.) While Hill remained on the ground, Sanders stood on Hill's foot, breaking Hill's toe. (Id. at 31.) The officers then picked Hill up and forced him into the back of their patrol car. After detaining Hill for a few hours at the City's police department, Hill was transported to the Jones County Jail, where his mother picked him up around 3:00 a.m.

The day after the arrest, Hill went to a hospital and requested x-rays. One x-ray revealed a possible break in his left toe, for which he was given pain medication. Hill also claims he sustained numerous bruises, cuts, and abrasions, which he photographed. (See Hill Dep., Defs.' Ex.'s 1-5.) Hill did not seek medical treatment for these injuries. Hill's medical records are not before the Court and, to date, have not been produced to Defendants, even though Hill's attorney agreed during Hill's deposition to make these

records available.  (Hill Dep. 66-67.)

Hill filed his Complaint on October 4, 2004.  (Compl., doc. 1.)  Each Defendant, except Officer Sanders, was properly served.  Defendants filed their Motion for Summary Judgment (doc. 15) on February 16, 2006.

## IV.   LEGAL DISCUSSION

### A. Lack of Service

As an initial matter, the Court will address Defendant Sanders's procedural argument that all of Hill's claims against him should be dismissed because he "has never been served, and therefore has not been properly joined as a party to this action."  (Defs.' Br. Supp. Mot. Summ. J., doc. 16, at 6.)

Federal Rule of Civil Procedure 4(m) provides:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed R. Civ. P. 4(m) (West 2006).  Notwithstanding the foregoing language, the Eleventh Circuit has held that "Rule 4(m) grants discretion to the district court to extend the time for service of process even in the absence of a showing of good cause."  ***Horenkamp v. Van***

*Winkle And Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005).  Yet, once a plaintiff receives notice that a defendant has not been properly served, he or she "may not remain silent and do nothing to effectuate such service."  *See Fowler v. Jones*, 899 F.2d 1088, 1095 (11th Cir. 1990) (citation omitted).  At minimum, a plaintiff should "attempt to remedy any apparent service defects of which [he or she] has knowledge."  *Id.*

It is undisputed that, to date, Sanders has never been properly served, even though Hill was made aware of his failure to serve Sanders on more than one occasion.  Hill's earliest indication that Sanders was not served was in Defendants' first defense in their Answer, wherein Defendants averred that "Plaintiff's Complaint should be dismissed for lack of service and insufficiency of service of process."  (Answer, doc. 3, at 1.)  Hill again received notice of the service problem when Defendants argued in their summary-judgment brief that dismissal of Hill's claims against Sanders was appropriate because Sanders had never been personally served.  (Defs.' Br. 6.)  Despite receiving notice of the service problem on more than one occasion, however, Hill still has not properly served Sanders.  Accordingly, the Court hereby dismisses all of Hill's claims against Sanders due to Hill's knowing failure to serve him properly.  The Court now turns to Hill's remaining claims against Defendants Mull, Nasworthy, and the City.

**B. Individual-Capacity Claims: Section 1983 and Qualified Immunity**

"To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must show that the defendant, under color of state law,[3] deprived the plaintiff of a right secured by the Constitution and laws of the United States." *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). "Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* "An underlying constitutional right must exist before a § 1983 action will lie." *Id.*

Although § 1983 creates a cause of action against state actors, a state actor acting within the scope of his or her official duties at the time of the alleged constitutional violation nonetheless may be entitled to qualified immunity from such actions. Qualified immunity shields a government official performing discretionary functions from liability for civil damages unless the performance of such functions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (citations and quotations omitted).

To be eligible for the protection of qualified immunity, a state official must prove that he was performing a discretionary function "when the allegedly wrongful act

---

[3] It is undisputed that Defendants acted under color of state law at all times relevant to this lawsuit.

occurred." ***Rich v. Dollar***, 841 F.2d 1558, 1563 (11th Cir. 1988).[4]  If the defendant satisfies this threshold inquiry, the burden shifts to the plaintiff to demonstrate "that the defendant public official's actions 'violated clearly established constitutional law.'" ***Id.*** (quoting ***Zeigler v. Jackson***, 716 F.2d 847, 849 (11th Cir. 1983)).

Once a defendant has satisfied his initial burden, courts employ a two-step analysis to determine whether or not the defendant is entitled to qualified immunity.  The first inquiry is whether the defendant violated a constitutional right.  If a constitutional violation is found, the court will then determine whether the constitutional right was clearly established at the time of the violation.  ***Crosby v. Monroe County***, 394 F.3d 1328, 1332 (11th Cir. 2004).

### 1. Is Defendant Mull Individually Liable Under Section 1983?

Hill alleges that Mull violated three of his constitutional rights during the course of his arrest.  First, Hill argues that Mull's attack, arrest, and detention of him "constituted an illegal seizure of the person . . . in violation of the Fourth Amendment" because there was no legal basis for it and because it was effected by an unreasonable application of force

---

[4] In this case, it is undisputed that Defendants are entitled to seek the protection of qualified immunity because they were, at all times relevant to this lawsuit, acting within their discretionary authority.  *See **Crosby v. Monroe County**,* 394 F.3d 1328, 1332 (11th Cir. 2004).  Thus, the Court's discussion below will deal strictly with whether Defendants are qualifiedly immune from Hill's suit.

under the circumstances.  (Compl. ¶ 2.)  Second, Hill argues that Mull's actions deprived him of his "right not to be deprived of liberty without due process of law," in violation of the Fifth and Fourteenth Amendments because Mull's "attack and seizure of [Hill] was without probable cause and was under the color of law."  (Compl. ¶¶ 3, 5.)  Lastly, Hill contends that Mull's attack, arrest, and detention of him violated his Fourteenth Amendment rights "to be secure in his person, to be free from punishment without due process, and to equal protection of the laws."  (Compl. ¶ 6.)  Mull argues that he is entitled to qualified immunity from Hill's individual-capacity claims against him.

The Court's first task is to identify the constitutional rights actually at issue in this case.  In this Court's view, Hill's complaint alleges two constitutional violations: wrongful arrest and excessive force.    Although Hill alleges Fourth, Fifth, and Fourteenth Amendment violations, the law clearly dictates that Hill's claims should be analyzed solely under the rubric of the Fourth Amendment.  *See* ***Albright v. Oliver***, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim.") (quoting ***Graham v. Connor***, 490 U.S. 386, 395 (1989)).  While the Fifth and Fourteenth Amendments both generally guarantee individuals "due process of law," the

11

Fourth Amendment specifically guarantees individuals the right to be free from "unreasonable searches and seizures." U.S. Const. Amends. IV, V, and XIV, § 1. An arrest is "the quintessential seizure of the person under [the] Fourth Amendment." *California v. Hodari*, 499 U.S. 621, 624 (1991) (internal quotation marks omitted). And, when a plaintiff's excessive-force claim arises in the context of an arrest, investigatory stop, or other "seizure" of his person, that claim "is most properly characterized as invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Because both of Hill's claims arise out of his arrest, i.e. "seizure," Hill's excessive force and wrongful arrest claims must be analyzed under Fourth Amendment standards. Accordingly, Hill's due process and equal protection claims based on the Fifth and Fourteenth Amendments are hereby **DISMISSED**.[5] The Court now turns to Hill's wrongful arrest and excessive force claims and Mull's assertion of qualified immunity.

### Wrongful Arrest

**(a) Did Mull violate Hill's Fourth Amendment rights by arresting him without probable cause?**

---

[5] The Court also notes that Hill's Fifth Amendment claims are improper because the Fifth Amendment's due-process clause applies only in the context of constitutional deprivations alleged against federal actors. *Bartkus v. Illinois*, 359 U.S. 121, 124 (1959). Because Hill has alleged no participation by federal actors in the constitutional deprivations outlined in the Complaint, Hill's reliance on the Fifth Amendment is misplaced.

Hill contends that Mull arrested him without probable cause, in violation of the Fourth Amendment.  Hill further contends that, because his arrest was illegal, *any* use of force was excessive.  In the alternative, Hill argues that, even if his arrest was lawful, Mull's use of force in effectuating Hill's arrest was excessive.

In this Circuit "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995)).  In the context of a *legal* stop or arrest, however, a claim for excessive force during the arrest *is* a discrete claim.  *Id.*  Before addressing Hill's excessive-force argument, then, the Court must decide whether Hill has satisfactorily demonstrated that his arrest violated his rights under the Fourth Amendment.

The Fourth Amendment is violated by an arrest without probable cause.  *See, e.g.*, *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir. 1992).  For purposes of the Court's qualified-immunity analysis, however, the salient question is not whether there was probable cause, but whether there was "arguable" probable cause to arrest.  *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 996 (11th Cir. 1995).  Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *Scarbrough*

13

*v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir. 1998)); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999). A court's evaluation of whether a defendant's probable-cause determination was reasonable is based on "the objective factors that gave rise to" the defendant's determination. *Scarbrough*, 245 F.3d at 1303 n.8. "[W]hether the arrestees' actions actually constituted a crime" is irrelevant to the court's inquiry. *Id*.

Mull arrested Hill for disorderly conduct, in violation of O.C.G.A. § 16-11-39(a)(3) (Lexis 2005), and obstruction, in violation of O.C.G.A. § 16-10-24(a) (Lexis 2005).  Under Georgia law, a person commits the offense of disorderly conduct when such person:

> without provocation, uses to or of another person in such other person's presence, oppobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words."

O.C.G.A. § 16-11-39(a)(3).   A person commits the offense of obstruction when he "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties."   O.C.G.A. § 16-10-24(a).  When determining whether a person committed the offense of disorderly conduct, Georgia courts "examine not only the words used but also 'the circumstances and context in which they were said.'" *Turner v.*

*State*, 618 S.E.2d 607, 608 (Ga. Ct. App. 2005) (quoting *Lundgren v. State*, 518 S.E.2d 908, 910 (Ga. Ct. App. 1999)).  Relevant circumstances for consideration include whether "the person using the offensive language did so in a face-to-face confrontation with the officer, and [whether] the opprobrious words amounted to . . . more than a one-word insult." *Turner*, 618 S.E.2d at 608.

Here, it is not entirely clear whether Mull had arguable probable cause to arrest Hill for disorderly conduct.  According to Mull, Hill's "abusive, disrespectful comment" (that is, "fucking jerk") constituted "fighting words" which were uttered in a confrontational manner; thus, Mull had arguable probable cause to believe that Hill's comment fell within the parameters of disorderly conduct.  Hill admits to calling Mull a jerk; however, he claims that he said "what a jerk," instead of "fucking jerk," as Mull contends.  (Hill Dep. 23.)  Hill also maintains that he was walking away from Mull, towards the convenience store, when he called Mull a jerk.  (Id.)  According to Hill, then, his words—profane or not—could not be considered by Mull to be fighting words because Hill muttered the allegedly offensive words to himself and the two men were not engaged in a face-to-face confrontation; thus, there was no indication that Hill intended to incite an immediate breach of the peace.

Given the factual discrepancies between Mull's and Hill's accounts of the events

precipitating his arrest, the Court cannot, at this juncture, determine whether or not Mull

had arguable probable cause to arrest Hill for disorderly conduct because the objective

circumstances giving rise to Mull's probable-cause determination are in dispute. *See*

***Prokey v. Watkins***, 942 F.2d 67, 73 (1st Cir. 1991) ("If what the policeman knew prior to the

arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause

would differ depending on the correct version, that factual dispute must be resolved by

the fact finder."). When the Court views the facts in the light most favorable to Hill, as it

must, the obvious conclusion is that Mull did not have probable cause to arrest Hill for

disorderly conduct. Based on Hill's testimony, a reasonable jury could find that he did not

engage in disorderly conduct, i.e., that he did not use "fighting words," and he was not

engaged in a face-to-face confrontation with Mull. Although Mull's testimony regarding

the events precipitating the arrest indicates that Mull had at least arguable probable cause

to arrest Hill for disorderly conduct based on Hill's offensive comment and the

confrontational manner in which it was directed at Mull, this Court would be exceeding

its authority if it rendered a decision on the issue at this stage of the litigation because a

jury must weigh the credibility and veracity of the conflicting evidence. Based on Hill's

version of the facts, though, Hill has established a violation of his Fourth Amendment

rights, and the Court must proceed to the second step of the qualified-immunity analysis.

**(b) Was Hill's right to be free from an arrest without probable cause clearly established at the time of the arrest?**

A constitutional right is clearly established if "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). When evaluating whether a constitutional right was clearly established at the time of the alleged constitutional deprivation, the "salient question . . . is whether the state of the law . . . gave [the officer] *fair warning* that [his] alleged treatment [of the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730 (2002). This warning can be provided in three ways. *Vinyard v. Wilson*, 311 F.3d 1340, 1350-53 (11th Cir. 2002). First, a federal statute or constitutional provision may in itself "be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the *total absence of case law*." *Id.* at 1350 (emphasis added). Second, preexisting case law articulating "broad statements of principle" that "are not tied to particularized facts" may provide fair notice that certain conduct is unconstitutional. *Id.*

17

at 1351.  Lastly, if there is no case law articulating a broad holding that is not tied to particularized facts, then courts look to judicial precedent that is tied to particularized facts.  ***Id.***

There can be no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment.  *See, e.g.,* ***Von Stein v. Brescher***, 904 F.2d 572, 579 (11th Cir. 1990).  Indeed, the Eleventh Circuit has repeatedly held that this legal tenet is "clearly established" for qualified-immunity purposes.  *See, e.g.,* ***id.***; ***Herren v. Bowyer***, 850 F.2d 1543, 1547 (11th Cir. 1988).

In light of the foregoing, the Court is satisfied that, based on the facts as alleged by Hill, Mull had fair warning that his decision to arrest Hill violated the Fourth Amendment's prohibition of arrests without probable cause.  Moreover, genuine issues of material fact preclude the grant of qualified immunity or summary judgment in Mull's favor.  Accordingly, Defendants' summary-judgment motion with respect to Hill's wrongful-arrest claim against Mull individually is **DENIED.**

**Excessive Force**

**(a) Did Mull violate Hill's Fourth Amendment rights by effectuating Hill's arrest with excessive force?**

The facts most relevant to Hill's excessive-force claim are these.  Hill contends that,

18

after he (quietly) called Mull a jerk, Mull charged at him, slammed him into the front of his truck, then proceeded to twist his arm in a painful manner while handcuffing him. (Hill Dep. 24-26.) After he was handcuffed, Hill alleges that Mull then spun him around, picked him up and threw him headfirst into the concrete. (<u>Id</u>. at 30.) Hill also maintains that he was not, at any point, resisting arrest. (<u>Id</u>. at 26.) Not surprisingly, Mull insists that the force he used to effectuate Hill's arrest was reasonable under the circumstances.[6]

The Fourth Amendment's guarantees encompass an individual's right to be free from *unreasonable* force in the context of a seizure. *Graham*, 490 U.S. at 396 (emphasis added); *see also* **Lee v. Ferraro**, 284 F.3d 1188, 1197 (11th Cir. 2002). Law enforcement officers do, however, have "the right to use some degree of physical coercion or threat thereof to effect" a lawful arrest or investigatory stop. *Graham*, 490 U.S. at 396. In the context of an unlawful arrest or investigatory stop, any use of force by an officer is unlawful. **Nolin v. Isbell**, 207 F.3d 1253, 1258 (11th Cir. 2000); **Thornton v. City of Macon**, 132 F.3d 1395, 1400 (11th Cir. 1998). When evaluating whether an officer's use of force

---

[6] Mull contends that, when he informed Hill that he was under arrest, Mull instructed Hill to place his hands on the truck. (Mull Aff. ¶ 6.) While Hill initially complied with Mull's instruction, after Mull handcuffed Hill's right wrist, Hill "became belligerent and began to resist. He grabbed the bumper of the truck with his left hand, and began kicking at [Mull], saying, 'No!'" (Mull Aff. ¶ 7.) When Sanders attempted to assist Mull in handcuffing Hill, Hill refused to let go of the bumper, so the officers had to pry Hill's left hand from it. (Mull Aff. ¶ 7.) Once the officers removed Hill's hand from the bumper, Hill allegedly continued to resist, and the officers were forced to take Hill to the ground so they could finish administering the handcuffs. (Mull Aff. ¶ 7.)

comports with the Fourth Amendment, a court must determine "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Ferraro*, 284 F.3d at 1197. "The 'reasonableness' inquiry [ ] is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).

In this Circuit, an officer is entitled to qualified immunity in an excessive-force case unless the Fourth Amendment or applicable case precedent (or both) would "inevitably lead every reasonable officer in [the defendant's] position to conclude that the force was unlawful." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000) (quotation marks omitted). Having determined that questions of fact exist as to whether Mull had probable cause to arrest Hill, the Court is unable to conclude as a matter of law that Mull was privileged to use any force against him.[7] Therefore, Mull is not entitled to qualified immunity and Defendants' summary-judgment motion with respect to Hill's

---

[7] Even assuming Hill's arrest was lawful, Mull still would not be entitled to qualified immunity from the excessive-force claim. Accepting Hill's version of the facts as true, the Court could not conclude that a reasonable officer would have believed that, after handcuffing and securing an arrestee, he had the authority to throw the arrestee to the ground, knee him in the back, and watch as another officer stood on the arrestee's feet. *See Ferraro*, 284 F.3d at 1199 (reversing grant of qualified immunity to police officer who arrested plaintiff for violating noise ordinance, handcuffed her, then slammed plaintiff's head against a car trunk, finding such force to be "wholly unnecessary to any legitimate law enforcement purpose").

excessive-force claim against Mull individually is hereby **DENIED**.[8]

## 2. Is Defendant Nasworthy Individually Liable Under Section 1983?

Hill alleges that Defendant Nasworthy, the City's Chief of Police at the time the events giving rise to this litigation unfolded, is subject to supervisory liability under § 1983 because he either was "aware or should have been aware" that Mull "had engaged in similar conduct in other instances." (Compl. ¶ 16.) Nasworthy's alleged knowledge, according to Hill, renders him "liable" for Defendant Mull's alleged constitutional violations. (Compl. ¶ 16.) Nasworthy claims that he cannot be held individually liable under § 1983 because: (1) he was not present during the alleged constitutional violations; and (2) there is no causal connection between Nasworthy's actions and the alleged constitutional deprivations. (Defs.' Br. 7.) The Court agrees.

Like municipalities, supervisory officials cannot be held liable under § 1983 on the basis of respondeat superior; rather, they may only be held liable under § 1983 for their own wrongful conduct. *See, e.g.,* ***H.C. by Hewett v. Jarrard***, 786 F.2d 1080, 1086 (11th Cir. 1986) (citing ***Monell***, 436 U.S. at 691); ***Brown v. Crawford***, 906 F.2d 667, 671 (11th Cir. 1990).

---

[8] As this Court noted earlier, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." ***Jackson***, 206 F.3d at 1171. The Court cannot fully examine the excessive-force claim at present, however, because the disposition of that claim hinges on whether or not the arrest was lawful. Accordingly, the questions of fact relating to the lawfulness of the arrest and the excessive-force claim must be decided by a jury.

However, the standard for imposing supervisory liability differs slightly from the standard for imposing municipal liability.  Specifically, supervisory liability may be imposed either "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation."  *Brown*, 906 F.2d at 671.

It is undisputed that Nasworthy was not present during Hill's arrest.  Because Nasworthy had no personal involvement in any of the constitutional deprivations alleged, the only way that he can be held individually liable for Mull's actions is if Hill can demonstrate a causal connection between Nasworthy's actions and the alleged constitutional deprivations.

A causal connection is "established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Id*.  A causal connection may also be established if the supervisor's improper custom or policy "result[s] in deliberate indifference to constitutional rights."  *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991).

Here, Hill failed to present any evidence of a history of unconstitutional, widespread use of excessive force within the City's police department sufficient to put Nasworthy on notice of the need to correct the abuse.  Moreover, there is no evidence of previous

22

complaints or injuries resulting from Mull's use of excessive force that would indicate that Nasworthy had an improper custom or policy that resulted in deliberate indifference to others' constitutional rights.  Simply put, the record is devoid of any evidence pointing to widespread abuse by the City's police officers or an improper policy that sanctioned the use of excessive force; therefore, Defendants' Motion for Summary Judgment as to Hill's individual-capacity claims against Nasworthy is hereby **GRANTED**.

## C. Official-Capacity Claims Under Section 1983

Hill also asserts official-capacity claims against the City, Mull, and Nasworthy, claiming the foregoing Defendants are liable for the constitutional violations allegedly committed by Defendant Mull.

Hill's official-capacity claims against Defendants Mull and Nasworthy are actually claims against the City itself.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Parks v. City of Carrollton*, No. 05-11427, 2005 WL 2219072, at *5 (11th Cir. 2005).  To prevail in an official-capacity claim against a city (and, by extension, its employees), a plaintiff must prove that "the allegedly unconstitutional action implemented an official policy of the City or was the result of a governmental custom."  *Parks*, 2005 WL 2219072, at *5.  A municipality cannot be held liable in its official capacity on a theory of respondeat superior.  *Monell v. Dep't Soc. Svcs.*, 436 U.S. 658, 690-91 (1978).  And, to the extent a

23

plaintiff argues that a municipality "failed to prevent its officers from using excessive force in arrests, he must show that the [municipality] acted with deliberate indifference to known or obvious consequences." *Parks*, 2005 WL 2219072, at *5.

Here, Hill neither alleged in his Complaint, nor offered any evidence suggesting, that the use of excessive force in arrests is widespread or persistent within the City's police department, let alone that the use of excessive force is the City's policy or custom which was implemented by Defendants Mull and Nasworthy in this case.  Nor has Hill alleged, let alone supplied, any record evidence indicating that the City was deliberately indifferent to the consequences of its officers using excessive force to effectuate arrests.  Accordingly, the City, Mull, and Nasworthy are entitled to summary judgment on Hill's official-capacity claims arising under § 1983.

## D. State-Law Claims Against Mull and the City of Danville

In addition to the federal constitutional claims brought under § 1983, Mull alleges a number of claims arising under Georgia law.  Because Hill's state and federal claims arise from a common nucleus of operative fact, the Court will exercise supplemental jurisdiction over Hill's state-law claims.  *See* 28 U.S.C.A. § 1367(a) (West 2006); *see* **Faucher v. Rodziewicz**, 891 F.2d 864 (11th Cir. 1990); *see also* **United Mine Workers v. Gibbs**, 383 U.S. 715, 725 (1966).

24

**1. Is Defendant Mull entitled to official immunity from Hill's individual-capacity claims against him?**

Hill asserts state-law claims against Defendant Mull in his individual capacity for: (1) assault; (2) battery; (3) false arrest; (4) unlawful taking; (5) false imprisonment; (6) wrongful detention; and (7) intentional infliction of emotional distress.[9]  Mull claims that he is shielded from Hill's foregoing claims by official immunity.

Under Georgia law, public officials are generally entitled to official immunity from suits against them in their individual capacities.  *Gilbert v. Richardson*, 452 S.E.2d 476, 478 (Ga. 1994).  State officials may be denied official immunity "only when they negligently perform or fail to perform their 'ministerial functions' or when they act with actual malice or intent to cause injury in the performance of their 'official functions.'"  *Id.* at 483; *accord* Ga. Const. art. I, § II, ¶ IX(d).

Here, there is no question that Mull was performing an official function when he arrested Hill.  Therefore, Mull is entitled to official immunity unless Hill shows that Mull acted with "actual malice or intent to cause injury."  *Gilbert*, 452 S.E.2d at 483.  "'[I]n the context of official immunity, actual malice means a deliberate intention to do a wrongful

---

[9] Hill's Complaint does not allege any state law supervisory claims against Defendant Nasworthy. Because this Court has already dismissed Defendant Sanders from this action, the Court need only address Hill's state-law claims against the remaining Defendants: Officer Mull and the City of Danville.

act [and] [s]uch act may be accomplished with or without ill will and whether or not injury was intended.'" *Meagher v. Quick*, 594 S.E.2d 182, 187 (Ga. Ct. App. 2003) (quoting *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999)).  The Court will address Hill's state-law claims separately and in the context of Mull's official-immunity assertion, below.

### (a) False-Arrest Claim

Hill alleges that Mull arrested him without probable cause, in violation of Georgia law.  Mull asserts that official immunity shields him from Hill's false-arrest claim.  In Georgia, the elements of a false-arrest tort are as follows: (1) an arrest under the process of law; (2) without probable cause; (3) made maliciously; (4) with prosecution terminating in favor of the complaining party.  O.C.G.A. § 51-7-1 (Lexis 2006); *see Desmond v. Troncalli Mitsubishi*, 532 S.E.2d 463, 467 (Ga. Ct. App. 2000).  A "malicious" arrest is one that is effected out of "personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." *Jenkins v. Blue Moon Cycle, Inc.*, 627 S.E.2d 440, 445 (Ga. Ct. App. 2006).  "Malice may be inferred if [the] defendant's acts were wanton or were done with a reckless disregard for or in conscious indifference to the rights of the plaintiff." *Id.*  Furthermore, "[m]alice sufficient to sustain a recovery may be inferred from the want of probable cause." *Id*.  If a plaintiff cannot satisfy all the elements of his or her false-arrest claim, the defendant is entitled to summary judgment.

*Desmond*, 532 S.E.2d at 467.

The record indicates that Hill has satisfied the first and fourth elements of his false-arrest claim: he was arrested, and the charges against him were subsequently dropped. The record also contains evidence from which a jury could conclude that Mull arrested Hill without probable cause.[10]  Moreover, because the probable cause and malice elements are interrelated, a fact issue also exists as to whether Mull's arrest of Hill was malicious. According to Hill, when Mull initially stopped Hill for speeding, Mull was "very aggressive" and looked as though he was "ready to fight" Hill.  (Hill Dep. 21.) When Hill called Mull a jerk under his breath, Mull then allegedly charged at Hill like a "football player" and handcuffed him in a painful manner.  (Id. at 24.)  After Hill was completely subdued, Mull still threw him to the ground, kneed him in the back, and watched as another officer stood on Hill's feet.  (Id. at 29-31.)  Based on these facts, a reasonable jury could conclude that Mull acted maliciously, that is, that Mull's actions were wanton or were committed with a reckless disregard for, or in conscious indifference to, Hill's rights.

Although Hill has raised genuine issues of material fact on the probable cause and malice elements of his false-arrest claim, that alone is not enough to defeat Mull's official-immunity assertion.  To determine whether Mull is entitled to official immunity, the Court

---

[10] *See* Wrongful Arrest Disc'n, *supra*, at 16-21.

27

must examine whether a jury could reasonably conclude that Mull acted with *actual* malice when arresting Hill.  According to Hill's version of the facts, Mull's aggression towards Hill was unprovoked, Mull arrested Hill without probable cause (or any cause at all), and Mull continued to exert unnecessary and unreasonable force on Hill after he was handcuffed and subdued.  When presented with these facts, a reasonable jury could infer that Mull acted with actual malice, i.e., that Mull deliberately intended to arrest Hill for a crime he clearly did not commit.  A reasonable jury could also infer from these facts that Mull deliberately exerted unreasonable and unlawful force on Hill after he was handcuffed.  Accordingly, Mull is not entitled to official immunity from Hill's false-arrest claim, and Defendants' Motion for Summary Judgment on the foregoing claim is hereby **DENIED**.

### (b) Intentional Infliction of Emotional Distress Claim

Hill also brings a claim against Defendant Mull individually for the intentional infliction of emotional distress.  Specifically, Hill alleged in his complaint that Defendants' actions "physically harmed, humiliated, embarrassed, and frightened" him. (Compl. ¶ 3.) To recover for the intentional infliction of emotional distress under Georgia law, a plaintiff must prove each of the following elements: "(1) intentional or reckless conduct; (2) which is extreme and outrageous; and (3) caused emotional distress; (4) which is severe."

28

*Blockum v. Fieldale Farms Corp.*, 610 S.E.2d 82, 85 (Ga. Ct. App. 2005) (quoting *Trimble v. Circuit City Stores*, 469 S.E.2d 776, 778 (Ga. Ct. App. 1996)).  "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law."  *Northside Hosp., Inc. v. Ruotanen*, 541 S.E.2d 66, 69 (Ga. Ct. App. 2000).  "Moreover, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  *Id.*  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (citing *Phinazee v. Interstate Nationalease*, 514 S.E.2d 843 (Ga. Ct. App. 1999).  "'Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'"  *Id.* (quoting *ComSouth Telesvcs. v. Liggett*, 531 S.E.2d 190, 191 (Ga. Ct. App. 2000)).  If a plaintiff cannot satisfy all the elements of his or her intentional infliction of emotional distress claim, the defendant is entitled to summary judgment.  *See Gwinnett Health Sys., Inc. v. Delu*, 592 S.E.2d 497, 501 (Ga. Ct. App. 2003).

29

The Court cannot conclude that the facts, even when viewed in the light most favorable to Hill, establish that Mull's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.  Certainly, Mull's alleged actions (e.g. arresting Hill without probable cause, handcuffing him in a painful manner, and throwing Hill to the ground after he was already handcuffed) could be characterized as unjustified, inexcusable, and malicious; yet, the Court cannot say that a recitation of these facts to an average member of the community would arouse the member's resentment against Mull and lead the member to exclaim, Outrageous! Therefore, because Hill has not satisfied the second element of his intentional infliction of emotional distress claim, Defendants' summary-judgment motion with respect to this claim against Mull individually is hereby **GRANTED**.

**(c) Wrongful Detention, Unlawful Taking & False Imprisonment Claims**

Hill also asserts state-law claims for wrongful detention, unlawful taking, and false imprisonment.  Mull claims that official immunity shields him from Hill's foregoing claims.

Under Georgia law, false imprisonment is "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20; *see Mitchell v. Lowe's Home Centers, Inc.*, 506 S.E.2d 381, 383 (Ga. Ct.

App. 1998).

Having already concluded that a jury question exists as to whether Mull had probable cause to arrest Hill for disorderly conduct, the Court cannot now decide whether Hill was falsely imprisoned, as the success or failure of the foregoing claim depends, in large part, on whether Hill's arrest and detention were lawful.  And, because Hill's wrongful detention and unlawful taking claims also depend on the resolution of that issue, summary judgment on those claims is inappropriate, as well.  Furthermore, the Court rejects Hill's assertion of official immunity as to Hill's false imprisonment, wrongful detention, and unlawful taking claims because this Court has already determined that a factual issue exists as to whether Mull acted with actual malice in arresting and subsequently incarcerating Hill.

Accordingly, Defendants' summary-judgment motion with respect to Hill's claims of wrongful detention, unlawful taking, and false imprisonment against Mull in his individual capacity is hereby **DENIED**.

### (d) Assault and Battery

The Court now turns to Hill's remaining state-law claims for assault and battery against Mull.  Once again, Mull asserts that he is officially immune from the foregoing claims.

31

In Georgia, when an officer makes a lawful arrest, "he can use no more force than is reasonably necessary under the circumstances." *Mullis v. State*, 27 S.E.2d 91, 98 (Ga. 1943).  An officer is not entitled to use any force to effectuate an unlawful arrest.  *See **Long v. State***, 583 S.E.2d 158, 160 (Ga. Ct. App. 2003).  If an officer uses force to effectuate an unlawful arrest, or if an officer's use of force in effectuating a lawful arrest exceeds the amount of force that is reasonably necessary under the circumstances, the officer may be liable for assault or battery or both.  *See **Smith v. Holeman***, 441 S.E.2d 487, 491 (Ga. Ct. App. 1994); ***Rodriguez v. Kraus***, 619 S.E.2d 800, 802 n.1 (Ga. Ct. App. 2005).    Under Georgia law, an individual commits the tort of battery if he intentionally makes harmful or offensive contact with another, and he commits the tort of assault if he intentionally causes another to fear or to apprehend a battery.  *Vasquez v. Smith*, 576 S.E.2d 59, 61 (Ga. Ct. App. 2003).  <u>Any</u> unlawful touching– even minimal contact–is actionable.  ***Darnell v. Houston County Bd. of Educ.***, 506 S.E.2d 385, 388 (Ga. Ct. App. 1998).

In his deposition, Hill testified that, when Mull initially stopped him for speeding, Mull was "very aggressive" and "ready to fight" Hill.  (Hill Dep. 21.)  When Hill called Mull a jerk under his breath, Mull then allegedly charged at Hill like a "football player." (<u>Id</u>. at 24.)  Once Mull handcuffed Hill, he then threw Hill to the ground, kneed him in the back, and watched as another officer stood on Hill's feet.  (<u>Id</u>. at 29-31.)  Based on Hill's

testimony, a reasonable jury could not only infer that Mull's use of force was unlawful, it could also infer that Mull's unnecessary and excessive force demonstrated a deliberate intent to commit wrongful acts.  Thus, because genuine issues of material fact exist as to whether Mull acted with actual malice in arresting and exerting force on Hill, Mull is not entitled to official immunity from Hill's assault and battery claims.   Accordingly, Defendants' Motion for Summary Judgment on Hill's foregoing claims is **DENIED**.

**2. Are the City of Danville and Mull, by Extension, Entitled to Sovereign Immunity?**

Hill also brings official-capacity claims arising under Georgia law against the City of Danville and Defendant Mull.  These Defendants argue that Hill's official-capacity claims should be dismissed because the City and Mull, by extension,[11] are entitled to sovereign immunity.  The Court agrees.

The doctrine of sovereign immunity provides that "a municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of duties imposed on them by law."  O.C.G.A. § 36-33-3; *see* ***Williams v. Solomon***, 531 S.E.2d 734,

---

[11] Hill's official-capacity claim against Mull is, in essence, a claim against the City itself.  *See **Pearson v. City of Atlanta***, 499 S.E.2d 89, 94 (Ga. Ct. App. 1998) ("Any cause of action averred against a municipal police officer in his official, as opposed to his personal/individual, capacity is, in reality, a suit against the municipality.").

737 (Ga. Ct. App. 2000).  Because Hill is attempting to impose liability on the City for Mull's alleged torts, Hill's official-capacity claims are barred by the doctrine of sovereign immunity.  While a city's sovereign immunity may be waived in limited circumstances, the burden to prove such waiver rests with the plaintiff.  *See Steele v. Ga. Dep't of Transp.*, 609 S.E.2d 715, 718 (Ga. Ct. App. 2005).  Hill has failed to carry that burden.  Consequently, the City and Mull are entitled to summary judgment to the extent that Hill alleges official-capacity claims arising under Georgia law against them.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 15) is hereby **GRANTED IN PART**, and **DENIED IN PART**.  Specifically, the Court finds as follows:

1.    Defendants' Motion for Summary Judgment is **GRANTED** with respect to Hill's § 1983 official-capacity claims against Mull, Nasworthy, and the City of Danville.

2.    Defendants' Motion for Summary Judgment is **GRANTED** with respect to Hill's § 1983 individual-capacity claims against Nasworthy.

3.    Defendants' Motion for Summary Judgment is **DENIED** with respect to Hill's § 1983 individual-capacity claims against Mull for wrongful arrest and excessive force under the Fourth Amendment.

34

4.   Defendants' Motion for Summary Judgment is **GRANTED** with respect to Hill's individual-capacity claim against Mull for the intentional infliction of emotional distress arising under Georgia law, but is **DENIED** with respect to Hill's individual-capacity claims against Mull for false arrest, unlawful taking, false imprisonment, wrongful detention, assault, and battery arising under Georgia law.

5.   Defendants' Motion for Summary Judgment is **GRANTED** with respect to Hill's official-capacity claims against Mull and the City arising under Georgia law.

In addition, Hill's claims against Defendant Charles Sanders are hereby **DISMISSED** because Sanders was never properly joined as a party to this action, and Hill's due process and equal protection claims based on the Fifth and Fourteenth Amendments are **DISMISSED** with prejudice.

SO ORDERED, this 23rd day of October, 2006.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab